# CARNIVAL CRUISE LINE

The Application having been submitted by the Seafarer named below to Carnival Corporation doing business as Carnival Cruise Lines ("CCL"), and CCL having considered said Application, this Seafarer's Agreement is hereby entered by and between CCL and Seafarer, pursuant to the terms and conditions set forth below. Any other arrangements, agreements, or understandings regarding terms of employment are hereby canceled and superseded, and no amendment or exceptions to this provision are valid. Seafarer shall not rely upon any statements or representations, whether orally or in writing, contrary to the Seafarer's Agreement concerning wages, tips, and other terms and conditions of service. Nor shall Seafarer rely upon any representation, whether oral or in writing, contrary to the agreement that Seafarer's employment is at-will.

1.   The Seafarer, **ANDREI VASILE COJOCARU, CREW # 454389**, agrees to work in the **tipping [X] non-tipping [ ]** position of **BAR WAITER** aboard any assigned vessel operated by CCL or any of its affiliated companies, regardless of the class or location of the assigned vessel. Once a Seafarer has been assigned to a vessel, he or she remains assigned to that vessel only, unlessand until reassigned to a different vessel at CCL's sole discretion. CCL reserves the right to change the Seafarer's assignedposition at any time without prior notice. CCL reserves the right to change the Seafarer's assigned vessel at any time without prior notice. From time to time as the operational and administrative needs of CCL may require, Seafarer may be placed in a different position than stated in an employment letter or in Seafarer's Agreement until such time as the indicated position is available on the vessel. CCL will attempt to place Seafarer in the expected position onboard the vessel within a period of time not to exceed four weeks from the date Seafarer signs on board the vessel with no additional compensation. If CCL is not able to place the Seafarer in the expected position within a four week period, CCL shall offer Seafarer a vessel transfer in the expected position or the opportunity to terminate this Agreement. If the Seafarer elects to terminate the contract under this Article, CCL shall bear the expense of return air travel.

2.   This Seafarer's Agreement shall be effective upon the Seafarer's reporting to work on an assigned vessel in navigation. The parties agree that the employment relations between them shall be governed by the terms of this Agreement commencing on the date the Seafarer first signs onboard the assigned vessel after signing this Agreement and continuing for a period of time which shall not exceed a maximum service period of **10** months. This Agreement shall automatically terminate without notice immediately upon Seafarer's unscheduled disembarkation of the assigned vessel if Seafarer disembarks the vessel for any reason, including but not limited to unscheduled personal leave, illness or injury, for more than one full voyage. This Agreement shall also terminate without notice immediately upon Seafarer being unfit or unable to serve in his or her stated position at the commencement of a new voyage. If the Seafarer remains on the assigned vessel after the commencement of a new voyage, he or she would do so as an invitee and would no longer be considered a member of the vessel's crew. Seafarer's status as a member of the crew would not resume until the Seafarer actually returns to serving in his or her stated position. This Agreement shall be deemed terminated upon achievement by the Seafarer of the age of 67 years. **Notwithstanding any other provision contained herein, this Seafarer's Agreement is terminable immediately at the will of either CCL or the Seafarer upon delivery of oral or written notice of termination or resignation.**

3. A.   Seafarer's right to receive any wages is conditioned upon his or her actual signing on as a member of the assigned vessel's crew and serving in his or her stated position while the vessel is in navigation.

3. B.   A week of work is always calculated from Sunday to Saturday, consisting of 42 hours base time and 28 hours overtime, whether overtime is worked or not worked, for a total work week of 70 hours. The Seafarer shall also be paid vacation pay at the rate of one day per eleven days worked as well as holiday pay at a rate equal to the seafarer's basic wage and regular overtime.

3. C.   **Non-Tipping Personnel ONLY.** Seafarer shall be paid the wage of $ **N/A** USD for each day of work, which shall include the Seafarer's basic wage, regular overtime and the Alternative Services Pay (ASP) if applicable, based on seafarer's position. This daily rate translates to a monthly wage of $ **N/A** USD. Seafarer agrees that extra

Rev. 12/2011                                                                                                                                                        Initials

apply to (i) any seafarer who receives gratuities or tips, bonus payments, alternative services pay, special event and discretionary payments which will be received by seafarer as a substitute for and in lieu of, extra overtime wages or (ii) any seafarer working in a management or Department Head capacity. It is understood and agreed that Seafarer has no entitlement or right to work or to be assigned to work extra overtime, which is assigned at the discretion of CCL, on an "as needed" basis.

**3. D.** **Tipping Personnel ONLY.** Seafarer shall be paid a basic wage of $ **1.6071** USD for each day of work. Seafarer shall also be entitled to receive a minimum monthly amount of $ **1400.00** from the gratuity based compensation program administered by CCL calculated over the term of the contract period (meaning that the actual monthly amount may be lower or higher during the contract period but will, on average, be no less than the specified monthly amount during the contract period). The compensation paid to Seafarer under this Subparagraph 3. D. shall be received by Seafarer as a substitute for and in lieu of, any overtime wages. Seafarer agrees and acknowledges that the gratuity based compensation program is administered by CCL in its sole discretion and that subject to the payment of the minimum monthly amount set forth in this Subparagraph 3.D., CCL may distribute monies collected under the program in CCL's sole discretion (including the amount, timing and form of payment) to any seafarer who CCL designates as being eligible to participate in the program including seafarers who receive ASP payments funded from the program.

**3. E.** Eligibility of Seafarer to participate within the gratuity program (including seafarers' eligibility to receive ASP payments funded from such program) and the level of participation is subject to change from time to time based on CCL discretion. Seafarer further acknowledges and agrees that the gratuity based compensation program is funded through a voluntary contribution by each passenger for the benefit of a broad group of eligible seafarers as designated by CCL from time to time. Passengers are not obligated to make a contribution or to adhere to CCL's suggested guidelines for such a contribution. Nonetheless, to the extent passengers follow the suggested contribution guidelines in whole or in part, and deliver their contribution to CCL, Seafarer agrees that any such contribution is not his or her personal wage, but rather a contribution to the overall gratuity based compensation program administered by CCL.
CCL shall distribute the funds contributed by the passengers to eligible seafarers less credit card transaction fees (to be paid from such funds in CCL's sole discretion). Seafarer agrees that CCL reserves and has the exclusive right to determine, in its sole discretion, the eligibility and number of total crew members entitled to share in the gratuity based compensation program (including those eligible to receive ASP payments funded from the program) and to set each seafarers' distribution of the funds in the program subject only to the monthly minimum compensation set forth in Section 3.D

**3. F.** In the event Seafarer believes he or she has worked more hours than documented on Seafarer's or CCL's time records, or that any earned wages of any type are due and owing, Seafarer must comply with the CCL Wage Grievance Policy and Procedure, including the requirement for mandatory binding and final arbitration of all claims for wages of any type. Seafarer hereby requests, consents to and authorizes CCL to arrange for, in its sole discretion, payment of wages by cash, check, negotiable instrument, wire transfer, direct deposit, pay card or any other commercially available method for the efficient, practical and prompt payment of wages earned during the Seafarer's employment. In consideration for his/her employment, the Seafarer's request, consent and authorization extends to, without limitation, deposit of wages into an account to secure a payroll, debit or stored value card, or any other account for the benefit of the Seafarer, as may be arranged by CCL from time to time.

**3. G.** In the event a Seafarer who may receive tips by virtue of his/her position works under this Agreement during a period when the ship is out of regular service for any reason, such as in dry-dock, during a trans-oceanic crossing, during an unscheduled extended voyage where gratuities are not collected from guests or while involved in inaugural functions, or the Seafarer is working but is not aboard ship, he/she is to be paid at the rate of $ **25.00** USD for each day of work. In the event the wage outlined in this subparagraph is paid, all provisions of subparagraph 3.B above, except those contained in the first and second sentences, will still apply with force and effect.

**3. H.** If Seafarer becomes ill, injured, unfit, or unable to work during a voyage, his/her entitlement to un-earned wages shall extend only to the end of the voyage from which Seafarer signs off duty. In the event Seafarer is signed off duty due to illness or injury, CCL reserves the right to provide medical treatment aboard its vessel or ashore in either

the vessel's home port, a regular port of call, or in Seafarer's home nation, at CCL's sole option, notwithstanding the automatic termination of this Agreement in such circumstances.

**3. I.** In the event Seafarer returns to work after this Agreement has automatically terminated pursuant to paragraph 2, then Seafarer's return to active duty shall be deemed to be the commencement of a new and separate Seafarer's Agreement under the same terms and conditions set forth herein and said terms will be in force and effect until such time as a new Seafarer's Agreement is executed.

**3. J.** The parties acknowledge and agree that should the assigned vessel be under construction at a shipyard and until the vessel starts navigation, Seafarer may be required to work on "comandata" regime on board of such vessel for all the duration of the construction operations or for a different term as indicated by CCL from time to time. During the "comandata" regime period, Seafarer shall perform his/her shipboard duty with the aim of familiarizing with the vessel's facilities and organization. For all the duration of the "comandata" regime, Seafarer will be subject to the same terms and conditions of employment provided in this Agreement. If the Seafarer's scheduled work assignment falls during a wet dock or dry dock, Seafarer may be signed off the assigned vessel prior to said wet dock/dry dock and, if so, will not be under CCL's employ during said periods of time. If the Seafarer remains on the vessel during said periods, he/she does so either as a business invitee or under the "comandata" regime as specified above until the vessel is returned to navigation.

**4.** Seafarer acknowledges that as a Seafarer he/she is required at all times to comply with and abide by the assigned vessel's rules and regulations; the Team Carnival Handbook, as well as all other oral and written rules, regulations and standards of CCLand/ or of the operator of the assigned vessel and/or of the ship's command for the assigned vessel. Any violation of any such rules, regulations, policies, procedures and/ or standards may result in disciplinary action, up to and including automatic termination. This Agreement in no way diminishes or modifies the Seafarer's independent duties as a Seafarer to comply with any such rules, regulations, policies, procedures and/or standards.

**5.** This Seafarer's Agreement constitutes the sole and entire employment agreement of the parties. There are no prior or present agreements, representations or understandings, oral or written, which are binding upon either party, unless expressly included in this Seafarer's Agreement. No modification or change of this Seafarer's Agreement shall be valid or binding upon the parties unless in writing and executed by the party or parties intended to be bound by it.

**6.** <u>Commercial Legal Relationship.</u> Seafarer and Cruise Line acknowledge and agree that Seafarer's employment with CCL constitutes a commercial legal relationship between the parties.

**7. Arbitration. Except for a wage dispute governed by CCL's Wage Grievance Policy and Procedure, any and all disputes arising out of or in connection with this Agreement, including any question regarding its existence, validity, or termination, or Seafarer's service on the vessel, shall be referred to and finally resolved by arbitration under the American Arbitration Association/International Centre for Dispute Resolution International Rules, which Rules are deemed to be incorporated by reference into this clause.** The number of arbitrators shall be one. The place of arbitration shall be London, England, Monaco, Panama City, Panama or Manila, Philippines whichever is closer to Seafarer's home country. The Seafarer and CCL must arbitrate in the designated jurisdiction, to the exclusion of all other jurisdictions. The language of the arbitral proceedings shall be English. Each party shall bear its own attorney's fees, but CCL shall pay for the costs of arbitration as assessed by the AAA. Seafarer agrees to appear for medical examinations by doctors designated by CCL in specialties relevant to any claims Seafarer asserts, and otherwise the parties agree to waive any and all rights to compel information from each other.

**8.** <u>Governing Law.</u> This Agreement shall be governed by, and all disputes arising under or in connection with this Agreement or Seafarer's service on the vessel shall be resolved in accordance with, the laws of the flag of the vessel on which Seafarer is assigned at the time the cause of action accrues, without regard to principles of conflicts of laws thereunder. The parties agree to this governing law notwithstanding any claims for negligence, unseaworthiness, maintenance, cure, failure to provide prompt, proper and adequate medical care, wages, personal injury, or property damage which might be available under the laws of any other jurisdiction.

Cruise Lines or its agents. I further authorize the complete release of any records or data pertaining to me which the individual, company, firm, corporation, or public agency may have, to include information or data received from other sources.

Seafarer hereby releases Carnival Cruise Lines, its agents, officials, representatives, or assigned agencies, including officers, employees, or related personnel both individually and collectively, from any and all liability for damages of whatever kind, which may, result from the review authorized herein.

10.     Severability.  If any provision, term, or condition of this Agreement is invalid or unenforceable for any reason, it shall be deemed severed from this Agreement and the remaining provisions, terms, and conditions of this Agreement shall not be affected thereby and shall remain in full force and effect.

**The undersigned Seafarer has read, understands and accepts the terms and conditions of employment as contained and incorporated herein. It is agreed by and between Seafarer and Carnival that the parties entered freely into this Agreement. It is further agreed by the parties that the language of the Agreement cannot be construed against the drafter because it represents the parties' mutual and bargained for terms and conditions for Seafarer's employment. The Seafarer acknowledges his/her separate and independent duty to abide by all other oral and written rules, regulations and standards of CCL and/or the vessel's operator and/or the ship's command.**

**In consideration for the offer of employment made herein, Seafarer accepts each and every term and condition of this Agreement, including but not limited to the at will nature of the employment and the provisions and limitations of paragraphs 2 and 3 and the arbitration/choice of law provisions in paragraphs 7 and 8. Seafarer acknowledges that CCL would not have entered into this Seafarer's Agreement or otherwise employed Seafarer if Seafarer had not agreed to all such terms and conditions. Thus, the application for employment having been accepted by CCL and the terms and conditions of employment having been agreed by and between both the Seafarer and CCL, the undersigned hereby enter into this Seafarer's Agreement this _____ day of Nov 2012.**

By: _____  By: _____
Seafarer's Signature              Representative, CCL

ANDREI VASILE

IRMA